# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Chapter 7 |
| | ) | |
| YEHUDA DRAIMAN | ) | Case No. 05 B 54315 |
| Debtor. | ) | |
| | ) | |
| | ) | Judge Carol A. Doyle |
| MULTIUT CORPORATION, | ) | |
| an Illinois corporation, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adversary No. 06 A 00476 |
| | ) | |
| YEHUDA J. DRAIMAN, | ) | |
| Defendant. | ) | |
| | ) | |
| NACHSHON DRAIMAN, | ) | |
| Plaintiffs, | ) | |
| v. | ) | Adversary No. 06 A 00477 |
| | ) | |
| YEHUDA J. DRAIMAN, | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION

Multiut Corporation ("Multiut") and Nachshon Draiman ("Nachshon") moved for summary judgment on their adversary complaints (Nos. 06-476 and 06-477) against the debtor, Yehuda Draiman ("Yehuda"). Multiut seeks a determination that certain debts of Yehuda are nondischargeable under 11 U.S.C. § 523(a)(2), (4) and (6). There is a long history of litigation between Multiut and Yehuda, his wife Miriam Draiman ("Miriam"), and various corporations owned or used by Miriam and Yehuda. Three judgments have been entered against Yehuda and these corporations, one in a state court proceeding and two in involuntary bankruptcy proceedings filed separately against Multiut and Nachshon, Yehuda's brother.

Multiut seeks summary judgment on the dischargeability counts (Counts I through IV) of its adversary complaint based primarily on principles of res judicata and collateral estoppel. Nachshon also seeks summary judgment on the dischargeability count (Count I) of its complaint. For the reasons discussed below, Multiut is entitled to judgment as a matter of law that the $1,252,046 state court judgment against Yehuda is nondischargeable pursuant to § 523(a)(6) under the doctrine of collateral estoppel because the state court made final determinations of factual issues that are dispositive of this claim. Multiut and Nachshon have also demonstrated that they are entitled to summary judgment holding Yehuda liable for the judgment entered against him in the involuntary bankruptcy proceedings. Therefore, Multiut's motion is granted in part and denied in part, and Nachshon's motion is granted.

## I.  Background and Facts

This action is one battle in a long and bitter war between two brothers, Yehuda Draiman and Nachshon Draiman. Nachshon owns Multiut, a company founded in the 1980's after the deregulation of the energy industry. Multiut negotiates contracts with gas and electricity suppliers and provides gas and electrical auditing and consulting services to its customers. Yehuda also began working for Multiut in 1989 and became an IMA. In 2000, the relationship between the brothers broke down when Nachshon learned that Yehuda had told many Multiut customers that companies formed by Yehuda and Miriam were affiliated with Multiut and that Yehuda was in effect stealing customers and even diverting payments due to Multiut to a newly renamed corporation owned by Miriam, Multiut Electric.

In 2001, Multiut filed suit in the Circuit Court of Cook County against Yehuda and the five companies used by Yehuda: U.S. Gas & Energy Corp. ("USG&E"), U.S. Utilities Corporation ("Utilities"), U.S. Gas, Electric and Telecommunications, Inc. ("USGET"), M. Draiman Corporation ("MDC"), and Multiut Electric, Inc. ("Multiut Electric"). Miriam was the sole shareholder of USG&E, USGET, MDC, and Multiut Electric. Multiut later amended the complaint to add Miriam as a defendant. On January 17, 2003, after a long bench trial, the state court entered judgment against Yehuda, Miriam, and the corporations on various counts, including breach of fiduciary duty, breach of contract, violation of the Uniform Deceptive Trade Practices Act, and tortious interference with prospective business relationships. The court also found Miriam liable for conspiring with Yehuda to breach his fiduciary duty to and employment contract with Multiut. The court entered judgment against Yehuda for $250,000 in compensatory damage, $250,000 in punitive damages, and later for $1,002,046 in attorneys fees (collectively the "State Court Judgment"). The Illinois Appellate Court affirmed the State Court Judgment, and the Illinois Supreme Court denied Yehuda and Miriam's petition for leave to appeal the Appellate Court's decision.

Yehuda launched a new offensive against Nachshon in March 2004, when he and two of Miriam's corporations (MDC and USG&E) filed involuntary petitions for relief under Chapter 7 of the Bankruptcy Code against Multiut and Nachshon. The cases were dismissed almost immediately. The Bankruptcy Court awarded $400,000 in compensatory damages, $25,000 in attorneys' fees, and $450,000 in punitive damages against Yehuda and the two corporations in Multiut's case (the "Multiut Involuntary Judgment"). The Bankruptcy Court also awarded

3

$25,000 in attorneys' fees and another $450,000 in punitive damages against Yehuda and the two corporations in Nachshon's case (the "Nachshon Involuntary Judgment").

Yehuda filed his Chapter 7 bankruptcy case on October 14, 2005. Multiut and Nachshon filed separate adversary proceedings against him. Multiut's adversary complaint seeks a determination that the State Court Judgment and the Multiut Involuntary Judgment are nondischargeable debts pursuant to 11 U.S.C. § 523(a)(2)(A), (a)(4), and (6). Multiut also filed several objections to Yehuda's discharge pursuant to 11 U.S.C. § 727. Multiut's motion requests summary judgment only with respect to Counts I through IV regarding the dischargeability under § 523 of the State Court Judgment and Multiut Involuntary Judgment. Likewise, Nachshon's adversary proceeding seeks a determination that the Nachshon Involuntary Judgment is a nondischargeable debt pursuant to 11 U.S.C. § 523(a)(6). Nachshon also filed several objections to Yehuda's discharge pursuant to 11 U.S.C. § 727. Nachshon's motion requests summary judgment only with respect to Count I regarding the dischargeability of the Nachshon Involuntary Judgment.

In Count I, Multiut alleges that the State Court Judgment is nondischargeable under § 523(a)(2)(A) of the Bankruptcy Code as a debt incurred as a result of false pretenses, false representations, or actual fraud. Count II alleges that the State Court Judgment is nondischargeable under § 523(a)(4) because Yehuda knowingly embezzled from Multiut by misappropriating checks and accounts receivable and depositing them into an account he established for one of his alter ego corporations. Count III alleges that the State Court Judgment is nondischargeable under § 523(a)(6) because essentially all of the conduct for which he was held liable was willful and malicious. Count IV alleges that the Multiut Involuntary Judgment is

4

nondischargeable under § 523(a)(6) because Yehuda filed the involuntary petition to cause willful and malicious injury to Multiut. Count I of Nachshon's complaint alleges that the Nachshon Involuntary Judgment is nondischargeable under § 523(a)(6) for the same reasons.

## II.  Res Judicata and Collateral Estoppel

Multiut and Nachshon argue that principles of res judicata and collateral estoppel render the State Court Judgment and their respective Involuntary Judgments nondischargeable as a matter of law. They contend that the state court and the bankruptcy court have already made binding determinations of all the factual and legal issues raised in the dischargeability counts.

Res judicata is sometimes used loosely to include the doctrines of res judicata and collateral estoppel. Both doctrines prevent parties from relitigating factual and legal issues that have previously been litigated. Both require a prior final judgment on the merits. Both require identical parties or a close relationship between parties in the prior case and the current case. However, the scope of the bar against relitigation differs. Res judicata, used in its strict sense, bars *all causes of action* that a prior court decided, merging them into the judgment and foreclosing further dispute. See Rivet v. Regions Bank, 522 U.S. 470, 474 (1998); Smith Trust & Sav. Bank v. Young, 312 Ill. App. 3d 853, 855 (2000). It is often referred to as "claim preclusion," because it bars relitigation of entire causes of action or claims, as opposed to individual legal or factual issues. It also bars causes of action not decided if the parties should have raised the claims in the prior lawsuit. Rivens, 522 U.S. at 474. "[T]he claim extinguished includes all rights of the plaintiff to remedies against the defendant with respect to all or any part

5

of the transaction, or series of connected transactions, out of which the action arose." Restatement (Second) of Judgments § 24 (1982).

Res judicata generally does not apply to dischargeability actions under § 523 of the Bankruptcy Code. Brown v. Felsen, 442 U.S. 127, 138 (1979). Section 523 sets forth many bases for finding debts nondischargeable, each with its own elements of proof. Schwager v. Fallas (In re Schwager), 121 F.3d 177, 187 (5th Cir. 1997). The issue of dischargeability does not arise until a debtor files for bankruptcy, so no dischargeability "claim" could have been adjudicated or extinguished in a previous lawsuit in which judgment was entered before the debtor filed her petition. In this case, the State Court Judgment and the Involuntary Judgments were entered against Yehuda and the other defendants before he filed his petition in this case. The dischargeability claims did not exist when the judgments were entered, so they could not have been resolved by the previous courts. Therefore, res judicata does not provide a basis for granting summary judgment against Yehuda.

Unlike res judicata, collateral estoppel often applies in § 523 actions. Grogan v. Garner, 498 U.S. 279, 285 (1991). Collateral estoppel, or issue preclusion, "refers to the effect of a judgment in foreclosing litigation in a subsequent action of an issue of law or fact that has been actually litigated and decided." Meyer v. Rigdon, 36 F.3d 1375, 1378 n.1 (7th Cir. 1994). Although bankruptcy courts often have exclusive jurisdiction to determine the dischargeability of debts, parties may not relitigate factual or legal issues resolved in an earlier litigation that were necessary to the judgment entered. Collateral estoppel forecloses relitigation of legal and factual issues even if they arise in a new legal claim in the second case. "The whole premise of collateral estoppel is that once an issue has been resolved in a prior proceeding, there is no

6

further factfinding function to be performed." Parkland Hosiery Co. v. Shore, 439 U.S. 322, 336 n.23 (1979). Therefore, when a previous judgment against a debtor resolved a specific factual or legal issue that is later raised in a dischargeability action under § 523, collateral estoppel may apply to bar relitigation of that issue. Grogan, 498 U.S. at 289–91; Montana v. United States, 440 U.S. 147, 153 (1979). Federal courts give collateral estoppel effect to state judgments based on the collateral estoppel rules that apply in the state court that entered the judgment. 28 U.S.C. § 1738; A.D. Broker v. Mercer, 305 F.3d 660, 669 (7th Cir. 2002).

Under Illinois law, collateral estoppel applies when four requirements are satisfied:

(1) the issue decided in the prior litigation was identical to the current one;
(2) there was a final judgment on the merits;
(3) the party against whom estoppel is asserted was a party to the prior action or in privity with it; and
(4) the factual issue at stake has actually and necessarily been litigated and determined in the prior action.

LaSalle Bank Nat'l Ass'n v. Vill. of Bull Valley, 355 Ill. App. 3d 629, 635 (2005). Courts applying collateral estoppel must carefully review the prior judgment to determine whether the factual or legal issue at issue in the later proceeding was in dispute and finally resolved in the earlier proceeding.

### III. Summary Judgment Standards

Multiut's motion for summary judgment asserts that the courts entering the State Court Judgment and the Multiut Involuntary Judgment have already decided all the issues relevant to each of their dischargeability actions in Counts I through IV. Nachshon's motion makes the same argument with respect to Count I. Both parties contend that, under the doctrine of

collateral estoppel, Yehuda may not relitigate these issues and that they are entitled to judgment as a matter of law based on the findings in the previous cases. Yehuda's responses to the motions say essentially that he contests the findings made by the previous courts, and that he should be allowed to take discovery to prove that the state court's findings were not correct.

On a motion for summary judgment, the moving party "has the burden of showing the absence of a genuine issue of material fact." Pommier v. Peoples Bank Marycrest, 967 F.2d 1115, 1118 (7th Cir. 1992). The court should not weigh evidence, make credibility determinations, or attempt to determine the truth of the matter. Instead, the court must "determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see Lohorn v. Michal, 913 F.2d 327, 331 (7th Cir. 1990). The court may consider "any material that would be admissible or usable at trial." Woods v. City of Chi., 224 F.3d 979, 987–88 (7th Cir. 2000). The court views the facts in a light most favorable to the nonmoving party and allows that party the benefit of all reasonable inferences. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Schneiker v. Fortis Ins. Co., 200 F.3d 1055, 1057 (7th Cir. 2000).

When a party seeks summary judgment based on the doctrine of collateral estoppel, the nonmoving party may not defeat the motion simply by establishing that it has evidence that conflicts with the factual conclusions of the trier of fact in the previous case. Even if the nonmoving party produces evidence that contradicts a prior judgment, collateral estoppel bars the party from relitigating facts decided in the previous case. Prochotsky v. Baker & McKenzie, 966 F.2d 333, 334 (7th Cir. 1992); Boim v. Quranic Literary Inst., 340 F. Supp. 2d 885, 900 (N.D. Ill. 2004). The moving party bears the burden to show that collateral estoppel applies in the first

8

instance. The nonmoving party may oppose the motion by arguing that the moving party has not met all elements of collateral estoppel. But if collateral estoppel does apply, it forecloses litigation of issues that the prior court actually and necessarily decided. Havoco v. Freeman, Atkins & Coleman, Ltd., 58 F.3d 303, 307–08 (1995).

### IV.  Count IV: § 523(a)(6) Willful and Malicious Injury—State Court Judgment

In Count IV of the complaint, Multiut alleges that the State Court Judgment against Yehuda is nondischargeable under § 523(a)(6). It contends that the state court actually and necessarily decided that Yehuda intentionally misappropriated Multiut receivables and usurped the business of Multiut to Yehuda's alter ego corporations.

In its motion for summary judgment, Multiut argues that the State Court Judgment resolved all the issues relevant to its § 523(a)(6) count. Section 523(a)(6) provides that a debt is not dischargeable if it involved (1) willful and malicious injury, (2) by the debtor, (3) to the property of another entity. 11 U.S.C. § 523(a)(6) (2000 & Supp. IV 2005). For collateral estoppel to apply, the court must conclude that (1) the state court case involved the same parties or their privies, (2) there was a final judgment on the merits, (3) the same issues were presented to the state court, and (4) the state court actually and necessarily decided the issues. Here, there is no question regarding the first two elements. First, the state court litigation involved the same parties or their privies. Yehuda was a defendant in the state court litigation and participated in the trial. Second, the state court entered a final judgment on the merits after trial, which was affirmed on appeal. The court must therefore examine the state court proceedings to determine

9

whether the state court actually and necessarily decided each element of Multiut's § 523(a)(6) claim.

### A. Willful and Malicious Injury

The first element of § 523(a)(6) is that the debt must arise from a willful and malicious injury. Kawaahau v. Geiger, 523 U.S. 57, 61–62 (1998). To prove that an injury was willful for purposes of § 523(a)(6), the plaintiff must show that the defendant intended not only the act resulting in harm, but also intended the harm. Id. at 61. Because § 523(a)(6) covers intentional torts, the basic principle of tort law known as "substantial certainty" suffices to show intent. Under that rule, an actor presumptively intends not only the initial conduct but all substantially certain results. Id.

To prove that an injury was malicious, the plaintiff must show that it was "wrongful and without just cause or excuse even in the absence of personal hatred, spite or ill will." The previous court need not have used the word "malicious" for collateral estoppel to apply. See Condict v. Condict (In re Condict), 71 B.R. 485, 488 (N.D. Ill. 1987) (denying discharge for "willfull, wanton, vexatious, and contemptuous conduct" on the basis of collateral estoppel, even though prior court never used the term "malicious").

To determine whether collateral estoppel bars litigation of whether Yehuda caused a willful and malicious injury to Multiut, the court must examine the details of the state court proceeding. Multiut initially sued Yehuda, USG&E, Utilities, USGET, MDC and Multiut Electric in the Circuit Court of Cook County. The court found that Yehuda was an employee of Multiut who entered into competition with his employer, and then caused Multiut's customers to believe that Multiut Electric and USG&E were part of or affiliated with Multiut. It held Yehuda

liable for breach of fiduciary duty to Multiut and breach of his contract with Multiut. The trial court specifically found that Yehuda "violated his fiduciary obligation as a key employee by competing on his own and through various alter ego identities; breached his contract of employment, and used the trade secrets of [Multiut]; to wit, his customer lists, knowledge of terms with each customer and business plans and materials, down to the direct copying of [Multiut's] customer agreement for use by Utilities, for his own benefit." (Pl. Stmt. Ex. B, Op. at 11.)

The court further found that, by usurping Multiut's business opportunities and deceiving many of Multiut's customers, he "positioned himself to enter into competition with, and then actually entered into competition with, his then employer, Multiut," by creating a business for electrical auditing and the exploitation of power purchase options ("PPOs") through Multiut Electric and USGET. He accomplished this by "usurpation of [Multiut's] business opportunities and through deceiving numbers of Multiut's customers." He also competed with Multiut's gas supply business through Utilities, a "means used by Yehuda Draiman to violate his obligation to his employer." (Pl. Stmt. Ex. B, Op. at 11.)

The court further found that Yehuda violated the Illinois Uniform Deceptive Trade Practices Act, 815 ILCS 510/1 *et seq.*, by "fully intending" to create confusion and in fact confusing Multiut's customers. The court also concluded that Yehuda tortiously interfered with Multiut's prospective business relationships by usurping Multiut's business plan, subverting a relationship he had developed on Multiut's behalf to create an electric energy business, and causing Multiut's customers to believe they were dealing with Multiut when they were really

dealing with the defendant corporations that were not affiliated with Multiut. (Pl. Stmt. Ex. B, Op. at 14.)

The court held Yehuda directly liable for his breach of fiduciary duty and breach of his employment contract. It also found that Yehuda was the alter ego of all five corporate defendants and therefore personally liable for damages caused by them. (Pl. Stmt. Ex. B, Op. at 10.) The court awarded damages against Yehuda in the amount of $250,000 in compensatory damages on the counts of breach of fiduciary duty, the Illinois Trade Secrets Act, and breach of contract. It concluded that these damages were sufficient to compensate Multiut for the damages caused with respect all the counts on which it found for Multiut. The court also awarded Multiut $250,000 in punitive damages against Yehuda.

Thus, the Illinois courts have conclusively determined that Yehuda "knowingly perpetrat[ed] a scheme of identities," "positioned himself to enter into competition with, and then actually entered into competition with, his then employer, Multiut," with an intent that "became clear" when he instructed and assisted Miriam to rename one of his alter ego corporations. Further, the court awarded punitive damages specifically because it found that Yehuda's conduct was "purposeful and intentional." Accordingly, the Illinois courts have actually and necessarily decided the facts necessary to establish that Yehuda had the requisite intent under § 523(a)(6). He fully intended to cause harm through competition, or at the very least, such harm was substantially certain to result.

Based on the same factual findings, the court also concludes that Yehuda's conduct was malicious because it was wrongful and without cause. See Barclays Am./Bus. Credit, Inc. v. Long (In re Long), 774 F.2d 875, 881 (8th Cir. 1985). Indeed, the court reasoned that regardless

of Yehuda's subjective "feelings of disappointment, or even his belief that Nachshon had breached a promise to him[,] does not legally justify the path of self-help that he evidently elected to follow." (Pl. Stmt. Ex. B, Op. at 12.) Thus, collateral estoppel applies to establish the first element of § 523(a)(6).

### B.   By the Debtor

The prior judgments also establish the second element of § 523(a)(6), that the injury was "by the debtor." Yehuda was held directly liable on all counts. Further, Yehuda's use of alter ego corporations establishes as a matter of law that any acts by the corporations and his acts were one and the same. Alter ego allows a court to impose personal liability on any entity—a parent corporation, a shareholder, a director or officer, or as here, a legally uninvolved third party—which "uses a corporation merely as an instrumentality to conduct that person's or entity's personal business." In re Rehab. of Centaur Ins. Co., 238 Ill. App. 3d 292, 296 (1992). The court found that Yehuda used these corporations "interchangeably, at his convenience." (Pl. Stmt. Ex. B, Op. at 10.) Acts of the corporations are thus legally attributable to Yehuda, so injuries they caused are attributable to Yehuda as well. Therefore, collateral estoppel applies with respect to the second element of § 523(a)(6).

### C.   To the Property of Another Entity

Under § 523(a)(6), the willful and malicious injury must be to the property of another. "Property" includes both tangible and intangible property. BPS Guard Servs. v. Myrick (In re Myrick), 172 B.R. 633, 637 (Bankr. D. Neb. 1994) (holding that damages for intentional

interference with business relations and misappropriation of goodwill would be nondischargeable if plaintiff proved malice). The state court assessed consequential damages against Yehuda in two components: (1) payments to Utilities derived from a customer Multiut originally contracted with; and (2) electric auditing and PPO business from customers Multiut previously billed, collected from and distributed to. These damages fall within the broad definition of "property" under § 523(a)(6). Therefore, collateral estoppel applies to the third element of § 523(a)(6).

Having determined that Yehuda willfully and maliciously caused injury to Multiut's property, the court must decide which components of the judgment are nondischargeable. The general rule is that the nature of the act determines dischargeability. "All liabilities resulting [from a willful and malicious act] are nondischargeable." Britton v. Price (In re Britton), 950 F.2d 602, 606 (9th Cir. 1991) (holding actual and punitive damages for willful and malicious act nondischargeable). Therefore, the entire judgment, punitive damages, and award of attorneys' fees are all nondischargeable as a matter of law.

### V. Involuntary Judgments—§ 523(a)(6)

Multiut and Nachshon also seek summary judgment on Counts IV and Count I of their complaints respectively. Both counts ask the court to determine that judgments against Yehuda and two of his alter ego corporations (MDC and USG&E), the three petitioning creditors in the involuntary petitions filed against Multiut and Nachshon, are nondischargeable under § 523(a)(6). The Multiut Involuntary Judgment awards $400,000 in compensatory damages, $25,000 in attorneys' fees, and $450,000 in punitive damages. The Nachshon Involuntary Judgment awards $25,000 in attorney's fees and $450,000 in punitive damages.

To prevail on these counts, Multiut and Nachshon must demonstrate that the filing of the involuntary petitions falls with the § 523(a)(6) exception to discharge for willful and malicious injury. Once again, the prior proceedings establish all elements of the claims. First, the court's award of punitive damages shows that Yehuda actually and necessarily possessed the requisite intent under § 523(a)(6). Indeed, after a consolidated trial on Multiut and Nachshon's motions for punitive damages, the bankruptcy court concluded that Yehuda filed the involuntary petitions "on purpose to harm without cause. . . . [The petition] was dismissed almost immediately upon the motion being made ." (Pl. Stmt. Ex. L, Tr. at 21.) The court emphasized that it was the "intention[al nature of the filing] which allows [Multiut] to have the punitive damages. [Yehuda] well knew he . . . should not" file under the circumstances. (Id. at 24.) The court continued: "This is shocking. . . . We don't get [cases like this]. This is the first one in 20 years that I can recall . . . ." (Id. at 25.) These conclusions show that Yehuda acted willfully and maliciously as a matter of law.

Second, the injury was necessarily "by the debtor" because Yehuda was one of the petitioning creditors. Third, Yehuda took purposeful steps to alert vendors, suppliers, and other business associates that Multiut was in bankruptcy. (Pl. Stmt. Ex. M, Tr. at 8–12.) These acts caused injury to Multiut and Nachshon's property because that term includes intangibles such as goodwill. Myrick, 172 B.R. at 637. Collateral estoppel therefore prevents Yehuda from contesting any element of the claims under § 523(a)(6). With no genuine issues of material fact for trial, the court will grant summary judgment on these counts in both adversary proceedings.

## VI. Other Counts

In Count I, Multiut also argues that the State Court Judgment against Yehuda is nondischargeable based on the fraud exception in 11 U.S.C. § 523(a)(2)(A). Section 523(a)(2)(A) provides that debts are not dischargeable if they are for money obtained by "false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). The Seventh Circuit has adopted a single test to prove all three types of fraudulent conduct. The creditor must show that—

(1) the debtor obtained funds through false pretenses or representations which the debtor knew to be false or made with such reckless disregard for the truth as to constitute willful misrepresentation;

(2) the debtor possessed the intent to deceive; and

(3) the creditor justifiably relied on the misrepresentation to its detriment.

Mayer v. Spanel Int'l, Ltd. (In re Mayer), 51 F.3d 670, 674–76 (7th Cir. 1995).

In this case, while Yehuda undoubtedly engaged in various types of fraudulent conduct, the specific findings in the State Court Judgment do not fit neatly into the requirements of § 523(a)(2)(A). For example, it requires the creditor to justifiably rely on the misrepresentations. Here, Yehuda often induced third parties to makes checks payable to or otherwise conduct business with entities he controlled, so the party who relied on his misrepresentations was someone other than Multiut. While some of Yehuda's actions consisted of misleading Multiut's own employees into depositing checks into accounts of his alter ego corporations, there is no need to determine which part of the damages assessed against Yehuda fit within § 523(a)(2)(A) because the court has already concluded that the entire State Court Judgment is nondischargeable under § 523(a)(6).

In Count II of the complaint, Multiut alleges that the State Court Judgment is nondischargeable under § 523(a)(4) as "embezzlement." However, under the nondischargeability statute, embezzlement means "the fraudulent appropriation of property by a person to whom such property has been entrusted or into whose hands it has lawfully come." In re Weber, 892 F.2d 534, 538 (7th Cir. 1989). Embezzlement is essentially a form of theft (larceny). The two differ only in that an embezzler acquires the property lawfully while a thief acquires the property unlawfully (such as by false pretenses).

The facts as found in the state court do not all fit within this definition. Essentially, Yehuda Draiman persuaded customers to begin paying a corporation he set up to siphon business away from Multiut. In so doing, he breached his fiduciary duty as employee and insider. Multiut quotes findings of fact in the opinion illustrating that Yehuda directed Multiut personnel to deposit checks payable to Multiut into the account of Multiut Electric, a company Yehuda set up as part of the scheme to divert business from Multiut. However, Yehuda himself never lawfully possessed the funds. In addition, the state court assessed damages for Multiut's loss of business revenue, and for electric auditing and PPO business Yehuda contracted for while in Multiut's employ. (Pl. Stmt. Ex. B, Op. at 12.) Thus, the debt is not necessarily "for" embezzlement, as the statute requires. Because the court has already concluded that the entire State Court Judgment is nondischargeable against Yehuda under § 523(a)(6), the court will not further analyze this count to determine whether some portion of the State Court Judgment might also be nondischargeable under § 523(a)(4).[1]

---

[1] Although Yehuda breached his fiduciary duty, and his acts may constitute "defalcation while acting in a fiduciary capacity," Multiut has not sought to recover under this aspect of § 523(a)(4), so the court will not address it.

## VII.  Conclusion

For all the reasons stated above, the court will grant summary judgment with respect to Counts III in favor of Multiut, and will enter a judgment finding that the $1,502,046 State Court Judgment entered against Yehuda is nondischargeable. The court will also grant summary judgment with respect to Count IV in favor of Multiut, and with respect to Count I in favor of Nachshon Draiman, and will enter a judgment finding that the $875,000 and $475,000 judgments entered against Yehuda are nondischargeable. The court will deny the remainder of Multiut's motion for summary judgment.

Dated:   June 22, 2006

_____
CAROL A. DOYLE
United States Bankruptcy Judge